IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MEGAN MURRIA<br>8352 Kingsley Drive<br>Reynoldsburg, Ohio 43068 | ) ) ) ) | Judge: |
| Plaintiff, | ) ) ) | |
| vs. | ) ) ) | |
| THE OHIO STATE UNIVERSITY<br>WEXNER MEDICAL CENTER<br>c/o Ohio Attorney General Dave Yost<br>30 East Broad Street, 14th Floor<br>Columbus, Ohio 43215 | ) ) ) ) ) ) ) | **COMPLAINT**<br><br>**(Race Discrimination)**<br><br>**Jury Demand**<br>**Endorsed Hereon** |
| Defendant. | ) | |

## THE PARTIES

1. Plaintiff, Megan Murria ("Plaintiff"), is a citizen of the State of Ohio and resides in Reynoldsburg, Ohio, in the County of Franklin.

2. Defendant, The Ohio State University Wexner Medical Center (the "Medical Center"), is an entity of the State of Ohio which employs doctors, nurses, and other personnel to evaluate, care for and treat patients at its hospitals, clinics and outpatient facilities. The Medical Center provides medical training and education to matriculating students, and retains doctors, nurses and other medical care personnel to provide supervision and instruction to students, interns, residents, and others.

3. The Medical Center and the State of Ohio employs doctors, nurses, and other personnel to evaluate, care for and treat patients at hospitals, clinics and

outpatient facilities and acted through it agents and employees who were within the course and scope of their employment.

4. At all relevant times, the Plaintiff was employed by the Medical Center and the Medical Center is an employer as defined in Title VII of the Civil Rights Act of 1964, as amended and codified in 42 U.S.C. Section 2000e(b), et seq.

5. At all relevant times, the Plaintiff was an employee of the VA as employee is defined in Title VII of the Civil Rights Act of 1964, as amended and codified in 42 U.S.C. Section 2000e(b), et seq.

6. This Court has subject matter jurisdiction over this matter pursuant to its federal claims jurisdiction. The federal claims are made pursuant to Title VII of the Civil Rights Act of 1964, as amended.

7. This Court has personal jurisdiction, and venue is proper in this Court because the events pertinent to this lawsuit occurred in the Southern District of Ohio, Eastern Division.

## FACTUAL BACKGROUND

7. Plaintiff is an African-American female born on March 31, 1985.

8. Plaintiff has a Bachelor's of Science in Nursing.

9 The Plaintiff has worked as a staff nurse on the 5th Floor Heart Unit at the Medical Center since 2012.

## DISPARATE OFFERS OF PROMOTION

10. In December of 2020, the Plaintiff applied for an Assistant Nurse Manager ("ANM") position on the Medical Center's 5th Floor. The ANM position is a promotion from a staff nurse position.

2

11. Jennifer Pavlica, a supervisor on the Medical Center's 5th Floor, told the Plaintiff that the Plaintiff was one of her best nurses and she thought the Plaintiff was "perfect" for the ANM position due to the Plaintiff's unit experience and her clinical ladders.

11. On February 16, 2021, Pavlica offered the Plaintiff the ANM position at a starting salary of $87,250. The new position was to start on March 1, 2021.

12. The Plaintiff responded to the offer indicating that she wanted to accept, but also negotiate the amount of the salary. The Plaintiff asked if the Medical Center would be willing to pay her more than $87,250.

13. Amy Simonds, in Human Resources at the Medical Center, responded to the Plaintiff's salary increase request later in the day on February 16, 2021. Simonds stated that she had "confirmed with leadership" and determined that the offer of $87,250 was the "highest" that the Medical Center could offer the Plaintiffs. Simonds further informed the Plaintiff that the offer of $87,250 was "well-reviewed, fair and equitable" and that the Plaintiff could request a compensation review once she completed her Master's degree. A copy of this correspondence is attached hereto as Exhibit 1.

14. The Plaintiff reluctantly turned down the job offer later that day because she preferred that the annual salary be closer to $90,000. The Plaintiff would have accepted the position if the Medical Center would have offered her an annual salary of $89,000.

15. On March 18, 2021, the Medical Center announced the hiring of a white nurse, Megan Zaleha, for the ANM position for which the Plaintiff had interviewed. Zaleha had one less year of nursing experience than the Plaintiff, fewer clinical ladders, had served on fewer medical center committees, had only worked night shifts and, like the Plaintiff, did not have a Master's degree. Zaleha's initial salary offer for the ANM position was $89,000. Zaleha did not engage in any negotiations to get to the $89,000 offer.

16. Within days of learning that Zaleha had been offered a higher starting salary than the Plaintiff had been offered, the Plaintiff approached the Medical Center and inquired why Zaleha was offered more money for the same job. Traci Mignery, the Medical Center's Director of Nursing, told the Plaintiff that the $87,250 annual salary offered to the Plaintiff was the result of a clerical error and that the Plaintiff's salary offer should have been higher.

17. Mignery also told the Plaintiff that there was nothing she could do to repair the situation. Mignery did not notify the Plaintiff that there was any reason why Zaleha could not have been informed that there was a clerical error made by the Medical Center and that Zaleha should not have been offered the ANM position at $89,000 before it was offered to Murria at that amount.

## PROTECTED ACTIVITY

18. The Plaintiff submitted a complaint to The Ohio State University Office of Institutional Equity ("OIE") on April 2, 2021, alleging that the disparate job offers constituted race discrimination. Mignery, Simonds and Pavlica had knowledge of

4

the Plaintiff's OIE complaint as all three were interviewed during the course of the OIE investigation.

19. Internal investigations of discrimination are protected activity under Title VII.

20. On August 25, 2021, the OIE investigator concluded that there was insufficient evidence of discrimination against the Plaintiff by the Medical Center.

21. In early September of 2021, the Plaintiff submitted race discrimination charges to both the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission. The EEOC subsequently closed its investigation, as the Ohio Civil Rights Commission had commenced its investigation earlier.

21. On December 17, 2021, the Plaintiff received a Notice of Right to Sue from the Ohio Civil Rights Commission.

## RETALIATION

22. Mignery and Simonds, as the Medical Center's Director of Nursing and HR Talent Acquisition Specialist respectively, are part of the hiring process for nurse managers and assistant nurse managers at the Medical Center.

23. Since April 2, 2021, the Plaintiff has applied for approximately twenty (20) other ANM positions with the Medical Center. As of December 20, 2021, the Plaintiff has not been offered any of the other ANM positions she has pursued despite being completely qualified and in spite of the statement of Jennifer Pavlica earlier in 2021 that the Plaintiff is one of her best nurses.

## DAMAGES

24. The Plaintiff's regular annual salary as a staff nurse with the Medical Center in 2020 was $81,000.

## FIRST CAUSE OF ACTION
### (Race Discrimination)

25. Plaintiff incorporates Paragraphs 1 through 24 above by reference as if fully rewritten herein.

26. Plaintiff is African-American and a member of a protected class. The Medical Center was aware of the Plaintiff's race.

27. Plaintiff was fully qualified for the ANM position she was offered by the Medical Center in February of 2021.

28. The Plaintiff was more qualified than Megan Zaleha, who is white, for the ANM position awarded to Zaleha in March of 2021. The Plaintiff had one more year of nursing experience than Zaleha, more clinical ladders, had served on more medical center committees, and had worked a wider variety of shifts than Zaleha.

29. The Medical Center discriminated against Plaintiff on the basis of her race with respect to the terms, conditions, and privileges of her employment by offering a less-qualified white employee a promotion at a higher salary than was offered to the Plaintiff.

30. The Medical Center lacks and continues to lack any legitimate business reason for its adverse action towards Plaintiff, and any other stated explanation for its conduct is a mere pretext for discrimination.

31. The Medical Center's conduct in offering the Plaintiff less money than Zaleha for the same position was intentional, willful, wanton and malicious.

32. As a direct and proximate cause of the Medical Center's actions, the Plaintiff has suffered harm, including, but not limited to, front pay, back pay, emotional harm, compensatory damages and attorney's fees and is entitled to judgment as a matter of law.

33. The Plaintiff seeks all compensatory and exemplary damages allowed by law.

## SECOND CAUSE OF ACTION
## (Unlawful Retaliation)

34. The Plaintiff incorporates paragraph 1 through 33 above as if fully set forth herein.

35. The Plaintiff filed an OIE complaint with the Medical Center on April 2, 2021.

36. The Plaintiff submitted charges to the OCRC and EEOC in early September of 2021.

37. The Plaintiff received a Notice of Right to Sue on December 20, 2021. A copy of this Notice is attached hereto as Exhibit 2.

38. The Plaintiff has been retaliated against by the Medical Center for opposing the race discrimination against her on numerous occasions since April 2, 2021. The Plaintiff has applied for approximately twenty ANM positions with the Medical Center. Despite being qualified for all of the ANM positions for which she has applied, the Plaintiff has not received a single job offer for any of these positions.

39. The Medical Center did unilaterally offer the Plaintiff an ANM position in May of 2021, but the position it offered at this time was not one which the Plaintiff had applied for, as she was unable to work the requisite hours.

40. The Plaintiff was retaliated against by the Medical Center by being denied the many promotions which she pursued between April and November of 2021. This conduct by the Medical Center violates Title VII, the Civil Rights Act of 1964, et seq, 42 U.S.C. Section 2000e, et seq., and other actionable laws because the Plaintiff had submitted charges of race discrimination to the OIE, OCRC and EEOC.

41. Title VII prohibits employers from any actions that might well "have dissuaded a reasonable worker from making or supporting a charge of discrimination."

42. As a direct and proximate cause of the Medical Center's actions, the Plaintiff has suffered harm, including, but not limited to, front pay, back pay, emotional harm, compensatory damages and attorney's fees and is entitled to judgment as a matter of law.

43. The Plaintiff seeks all compensatory and exemplary damages allowed by law.

## CONCLUSION

WHEREFORE, the Plaintiff suffered damages proximately caused by the acts of the Medical Center in violation of her rights under Title VII of the Civil Rights Act of 1964 and demands:

A. Compensatory damages in an amount in excess of $50,000, including back pay, front pay, consequential damages, and incidental damages;

B. Exemplary damages, attorney's fees, court costs and interest;

C. Promotion to an ANM position on first shift at the Medical Center; and/or

D. All other relief determined by the Court to be appropriate, just and equitable.

Respectfully submitted,

**COHEN ROSENTHAL & KRAMER LLP**

/s/ Ellen M. Kramer
Jason R. Bristol (0072989)
Ellen M. Kramer (0055552)
3208 Clinton Avenue
One Clinton Place
Cleveland, Ohio 44113
(216) 815-9500 (Telephone and Facsimile)
jbristol@crklaw.com
emk@crklaw.com

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff, Megan Murria, hereby demands a trial by jury on all issues so triable with the maximum number of jurors permitted by law.

/s/ Ellen M. Kramer
Ellen M. Kramer (0055552)

9

Again, thank you for your time.

Best regards,
Complainant

On Tue, Feb 16, 2021 at 9:33 AM Witness 1 wrote:

Hello ▓▓▓,[Complainant]

I apologize for not being clear, but in referencing "leadership" below, that includes what I have discussed and confirmed with Respondent and W1. This is the highest we can offer. Once you complete your Master's degree you/▓▓ could request a Compensation review for any possible adjustments at that time, as well.     [Respondent]

Thanks,

Witness 1


THE OHIO STATE UNIV

From: Complainant
Sent: Tuesday, February 16, 2021 12:30 PM
To: Witness 1
Subject: Re: ANM on 5 Ross

CAUTION: External Email

Hello W1,

Thanks for the prompt response. As I understand your position, I cannot speak to others in this role and what attributes they brought to the role. I can only speak to how I can positively impact 5 Ross. My seamless transition has to be valued. Transitioning into this role I stand to lose articles that I have worked hard for. I would be unable to return to a staff nurse position whole. I lose seniority and both clinical ladders. In addition the current compensation offer does not speak to any ANM that holds a Masters Degree. My anticipated graduation date is May 2022.


EXHIBIT
1

In addition, I do understand various standards and pay rates that must be met to be acceptable for our organization. I believe that my salary request is justified due to the extensive experience I have from working within the unit where I am looking to advance . I understand and respect the delegate needs of 5 Ross and ensure you that no other candidate is willing and can address those needs. I have researched salaries before making this counter offer to ensure that I was making a fair request.

As mentioned prior, I am a candidate with proven experience and leadership abilities that I believe will make me a valuable addition not only to the leadership of 5 Ross but to leadership in the Ross as a whole.

Kindly, follow up with [Respondent and W1]. If we can mutually agree to a compensation offer, I am happy to join hands with the leadership.

Respectfully,

[Complainant]

On Tue, Feb 16, 2021 at 7:23 AM [Witness 1] wrote:

Hi [Complainant]

Thanks for your email. While I understand your point of view, I have confirmed with leadership again, and $87,250 is as high as we can go. Many factors are considered including equity, and we cannot justify any higher amount without negatively impacting others in the same job title with similar or even more experience. We did factor in all your attributes and gave maximum credit possible. I do empathize and understand the amount is not what you hope, but it is a well-reviewed, fair and equitable offer. Please let me know your thoughts, and I will follow up with [Respondent and W1] accordingly.

Thanks,

[Witness 1]


THE OHIO STATE UNIV.

3

From: Complainant
Sent: Tuesday, February 16, 2021 10:10 AM
To: Witness 1
Subject: Re: ANM on 5 Ross

CAUTION: External Email

Hello W1,

I received your voicemail, sorry to have missed your call. I am currently sitting with my son helping him navigate through his online schooling. (lol)

Thank you for extending the offer for the Assistant Nurse Manager position on 5 Ross. I am highly delighted to have received the offer. Before I can accept, I would like to discuss the matter of compensation. As demonstrated in my resume I bring forth excellent nursing experience and strong leadership skills. I have worked on 5 Ross as a staff nurse for almost nine years. Within the past nine years, I have worked as a charge nurse (5 years), precepted new grads and nursing students, been involved in multiple committees, handled staffing for many years, obtain a certification in the patient population area (PCCN), as well as obtaining both nursing clinical ladders. As it pertains to higher education, I am currently enrolled in the Master's of Health Care Innovation at the College of Nursing. I can offer a seamless transition and great pairing with the current Nurse Manager as I am already familiar with the patient population and the current staff. [Respondent]

With my expertise on 5 Ross, an acceptable salary would fall in the range of $97,000 and $99,000 I bit higher than your offer of $87,250. I am fully committed to the growth and development of the unit and myself. I can see a future in this role. I am confident we can come up with a mutual agreement on the salary. Thank you for your consideration.

Kind Regards,

Complainant

On Tue, Feb 16, 2021 at 5:40 AM Witness 1 wrote:

Hi ,[Complainant]

4



# OHIO CIVIL RIGHTS COMMISSION

Governor Mike DeWine
Commissioners: Lori Barreras, Chair | J. Rita McNeil Danish | William Patmon, III | Madhu Singh | Charlie Winburn
Executive Director Angela Phelps-White

December 16, 2021

Megan Murria
8352 Kingsley Dr.
Reynoldsburg, Ohio 43068

Mailed: December 16, 2021

The Ohio State University, Office of Legal Affairs
Attn: Mary Menkendick
1590 N. High St., Suite 500
Columbus OH 43201-2247

Email: menkedick-ionno.1@osu.edu

## LETTER OF DETERMINATION
Megan Murria v. The Ohio State University Wexner Medical Center
COL71(48920)09022021; 22A-2021-02766C

**FINDINGS OF FACT:**
Charging Party filed a charge of discrimination with the Ohio Civil Rights Commission alleging Respondent engaged in an unlawful discriminatory practice. All jurisdictional requirements for filing a charge have been met. Prior to the conclusion of the investigation, Charging Party requested to withdraw the charge to request a Notice of Right to Sue from the Ohio Civil Rights Commission or Equal Employment Opportunity Commission.

**DECISION:**
The Ohio Civil Rights Commission has entered into its record a finding of **WITHDRAWAL OF CHARGE – REQUEST A NOTICE OF RIGHT TO SUE**. The matter is **CLOSED**.

Please refer to the enclosed **NOTICE OF RIGHT TO SUE** for additional information on Charging Party's suit rights.

**NOTICE OF RIGHT TO PETITION FOR JUDICIAL REVIEW:**
A determination of the Commission that constitutes a Final Order is subject to judicial review, wherein the court reviews the contents of this letter and determines if there are sufficient factual findings supporting why the Commission did not issue a complaint. A petition for judicial review must be filed in the proper common pleas court within **THIRTY (30) days** of the date the Commission mailed this Final Order. The right to obtain judicial review and the mode and procedure thereof is set forth in Ohio Revised Code § 4112.06.

The judicial review process is not a means to reexamine the investigation or further pursue your allegations through the Commission. You may consult with an attorney for information on available options.

A Probable Cause finding is not a Final Order and is not subject to judicial review by a court. All other determinations of the Commission constitute a Final Order and are subject to judicial review by a court.

---

COLUMBUS REGIONAL OFFICE | Rhodes State Office Tower 30 E. Broad St., 4th Floor Columbus, OH
PHONE: 614-466-5928 | TOLL FREE: 1-888-278-7101 | TTY: 614-752-2391 | FAX: 614-466-6
www.crc.ohio.gov



EXHIBIT 2

Megan Murria v. The Ohio State University Wexner Medical Center
COL71(48920)09022021; 22A-2021-02766C
Page 2

FOR THE COMMISSION,

*Aman Mehra/as*

Aman Mehra
Columbus Regional Director

cc: <u>Representative for Charging Party</u>:
Cohen Rosenthal & Kramer LLP
Attn: Ellen M. Kramer, Esq.
3208 Clinton Ave.
Cleveland, Ohio 44113

Email: emk@crklaw.com

<u>Representative for Respondent</u>:
Ohio Attorney General's Office
Attn: Jessica I. Oldham
30 E. Broad St.
Columbus, Ohio 43215

Email: Jessica.Oldham@OhioAGO.gov